L. A. EBERT AND LOU EVA EBERT, HIS WIFE, APPELLANTS, *v.* WESTERN STATES REFINING COMPANY, A CORPORATION, RESPONDENT.

No. 4137

April 17, 1959

337 P.2d 1075

(Petition for rehearing denied April 29, 1959.)

*D. W. Priest,* of Reno, for Appellants.

*Williams and Mann,* of Elko, for Respondent.

## OPINION

By the Court, McNamee, J.:

This appeal is from a judgment and decree which reforms and specifically enforces a written agreement to convey real property.

The written agreement is in the form of two letters and is the result of prior oral discussions between the appellant, L. A. Ebert, hereinafter called Ebert, and agents of respondent corporation, hereinafter called the corporation.

On June 3, 1952 the following letter was written by respondent to said appellant:

"Dear Mr. Ebert:

"This letter is to confirm our understanding until a formal contract can be drawn regarding the property located at Elko, Nevada known as Oil City.

"It is our understanding of our agreement that we will lease the property from you for a period of five years at a monthly rental of $400.00 per month, that at the end of the five year period by giving us 60 day notice we shall have the right to purchase the property involved for the sum of $16,000.00. In the meantime it is our intention to remodel and re-construct the building by adding additional storage and several new pump islands. That in the event we do not desire to

exercise the option, that is the option to purchase, all property constructed or located on the premises shall become the property of the lessor.

"As soon as I have obtained from you the exact legal description I will draw a formal contract which shall provide for the execution by you and your wife and which shall be to the effect that in the event the option is exercised to purchase the property you will furnish title to the entire property free and clear of all encumbrances.

"I believe that this sets forth our understanding of the matter and this letter will suffice as our working agreement until a more formal contract can be executed.

"Yours very truly,

"Western States Refining Company
"/S/ W. S. Wagstaff"

On June 4, 1952 Ebert answered as follows:
"Mr. W. S. Wagstaff
"Western States Refining Co.,
"North Salt Lake, Utah
"Dear Stan:

"I have your letter of June 3rd, and your letter confirms exactly what we agreed to, except I believe the Company should take care of all taxes, and such Insurance that will protect us, that you deem proper, otherwise I guess that covers everything.

"This is the legal description of the property, is as follows: Lots 11, 12 and 13 of Block 47R of Sunset Heights Sub-division of the First Addition to the City of Elko (formerly Town of Elko) as laid down and delineated in the official plat of said Town (now said City) on file in the office of the County Recorder of said County.

"Enclosed please find two drawings that the County Surveyor made up after a regular tussle by me and two days effort.

"When you incorporate my wife's name, it is, Lou Eva Ebert.

"My Insurance lapses soon, I believe August 17th, 1952."

The chief contention of the parties concerns the meaning of the phrase "that at the end of the five year period by giving *us* 60 day notice we shall have the right to purchase" (emphasis added), appearing in said June 3 letter.

The evidence shows that it was the intention of the parties prior to the exchange of these letters that plaintiff corporation would buy the property on which a service station was being operated for the sum of $40,000 under an agreement in the form of a lease and option with rental payments of $400 a month for a period of five years commencing August 1, 1952; that at the end of said five-year period the purchaser would have paid $24,000 in rents, and the balance due on the purchase price would then be $16,000, which the purchaser could pay if it desired a deed for the property.

After the exchange of said letters the corporation went into possession of the property, expended over $17,000 in improvements and paid all of the rent, except for the last two months of the term, to wit, for the months of June and July 1957.

In June 1953 the corporation sent to Ebert a formal lease containing provisions for a term of five years with an option to the lessee to purchase at the end of said period for the sum of $16,000 upon lessee giving notice of its intention so to do at least 60 days prior to the expiration of the lease. This formal lease was never executed by Ebert. In February 1957 the corporation gave Ebert a written notice of its exercise of the option and offered to pay forthwith the sum of $16,000 to Ebert's credit into any bank he should designate. This notice was ignored by Ebert. Ebert's conduct made it apparent to the corporation that Ebert would resist the corporation's demands that he and his wife convey the property to it and that such resistance would be based upon the ground that said letter of June 3, 1952, in using the words "by giving us 60 day notice, we shall have the right to purchase," required the consent of the lessor (Ebert) before the lessee had the right to exercise the option.

W. S. Wagstaff, the general manager and president of the corporation, testified that he had dictated the letter of June 3, 1952 to his secretary in the presence of Ebert and that as dictated he had said "a 60 day notice" which was the understanding of the parties, but that the transcriber had inadvertently written "us" for "a"; that neither he nor Ebert had noticed the inadvertence at that time; and that it was not called to the corporation's attention until after February of 1957. This testimony was contradicted by Ebert. The trial court, believing the testimony of Wagstaff, ordered reformation of the letter of June 3 to read "a" instead of "us" and thereupon decreed specific performance as prayed for.

Appellant's counsel devotes a substantial part of his briefs and argument contending that this action of the court in ordering reformation was erroneous.

It is apparent to this court that the letter in its original form intended to and did refer to an unconditional option to purchase rather than to an option to purchase conditional upon the seller's consent. The sound of the spoken words "give us 60 day notice" is so similar in sound to the words "give a 60 day notice" that it is not difficult for us to recognize the fact that a substitution of the one for the other could easily occur on transcription. Furthermore, unless an option to purchase was intended, these words pertaining to an option would be meaningless and surplusage. That an option to purchase was intended is also apparent from the two subsequent references in the letter to an option wherein the option is expressly referred to as an option to purchase. A reformation of the instrument therefore was unnecessary and the court action in this regard in no manner could have prejudiced the appellants.

Appellants next contend that even if the agreement refers to an option to purchase, the failure to pay the last two months' rent precluded the corporation from exercising the option. In this connection it must be recognized that in February 1957, when the corporation

gave notice of its intention to exercise the option, the rent for the last two months of the term had not yet become due and payable.

The fact that these two monthly payments were thereafter not paid in June and July 1957 when they became due did not destroy the corporation's right to a conveyance when, as the trial court found, it was apparent to the corporation that Ebert would not convey voluntarily and that the corporation was at all times ready, willing, and able to pay the $800 rent remaining due and unpaid and the $16,000 remaining to be paid on the purchase price. See Mosso v. Lee, 53 Nev. 176, 295 P. 776; Irvine v. Hawkins, 20 Nev. 384, 22 P. 240; Restatement, Contracts, sec. 306, sec. 374 (1932).

Affirmed.

MERRILL, C. J., and BADT, J., concur.